[Cite as *Pintagro v. Sagamore Hills Twp.*, 2012-Ohio-2284.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

SUSANNE PINTAGRO

    Appellant

    v.

SAGAMORE HILLS TWP., et al.

    Appellees

C.A. No.    25697

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV2009-07-5378

DECISION AND JOURNAL ENTRY

Dated: May 23, 2012

DICKINSON, Presiding Judge.

INTRODUCTION

{¶1} Sagamore Hills Township's fiscal officer hired an intern who made Susanne Pintagro, the administrative assistant for the Township's trustees, feel uncomfortable and threatened. Ms. Pintagro took her concerns to the trustees, who promised to resolve the problem. When they did not act as quickly as Ms. Pintagro wanted, she told them that she did not want to work the same hours as the intern and that she would use her vacation time until they took action. The trustees determined that, since both Ms. Pintagro and the intern had to work on Mondays, they could not satisfy her demand. They, therefore, gave her the choice of either resigning or being terminated. After Ms. Pintagro resigned, she sued the Township, the trustees, and the Township's lawyer for a hostile work environment, retaliation, wrongful termination, tortious interference with a business relationship, age discrimination, civil conspiracy, and a violation of Ohio's Public Records Act. The Township, the trustees, and the lawyer moved for

summary judgment on all of her claims. Before the trial court ruled on their motions, Ms. Pintagro moved to amend her complaint to add a claim that the trustees had violated Ohio's Open Meetings Law. The trial court denied her motion and granted summary judgment to the defendants. Ms. Pintagro has appealed, arguing that the court incorrectly granted the Township and the trustees summary judgment regarding her retaliation claim and that it incorrectly denied her motion to amend her complaint. We affirm because Ms. Pintagro failed to establish that a genuine issue of material fact exists regarding whether she engaged in a protected activity and because the trial court exercised proper discretion when it denied her motion to amend her complaint.

## BACKGROUND

{¶2} The Township hired Ms. Pintagro in 1989 to work part-time as the trustees' administrative assistant. For years she served the Township with distinction. In the fall of 2007, Township voters elected a new fiscal officer, Scott Gale. Mr. Gale, who had previously taught college classes, hired one of his former students, John Gersper, as an intern. Mr. Gersper began working for Mr. Gale in April 2008.

{¶3} According to Ms. Pintagro, Mr. Gersper began acting oddly toward her as soon as he started working for Mr. Gale. She alleged that he would come into her office uninvited or hover around her door. He appeared to keep her under surveillance, intruded into her conversations, and eavesdropped on her. After a couple of months of this behavior, Ms. Pintagro wrote to the trustees, explained the situation, and told them that Mr. Gersper's "actions make me feel uncomfortable and concerned for my safety."

{¶4} Ms. Pintagro testified that the trustees told her that they would take care of things, and suggested that she keep the door to her office closed for the time being. According to Ms.

Pintagro, that was not possible because her office was small and did not have working heat or air conditioning. She testified that one of the trustees, James Hunt, told her that he had instructed Mr. Gersper to stay away from her, but the very next day Mr. Gersper appeared to deliberately walk by her several times. She said that Mr. Gersper also undermined her authority by setting up a computer that she had hired an outside contractor to install.

{¶5} According to Ms. Pintagro, the computer incident led to an exchange between Mr. Gersper and her in the Township parking lot in front of trustee Rose Mary Snell. During the exchange, Mr. Gersper allegedly told Ms. Snell that Ms. Pintagro had been making fun of Ms. Snell's memory. According to Ms. Pintagro, the only conversation that he could have been talking about was one that she had with Mr. Hunt in which it came up that Ms. Snell had forgotten the date of a meeting. According to Ms. Pintagro, that led to them "laughing about the fact that we don't remember things like we used to." Ms. Pintagro noted that Mr. Gersper's out-of-context remark was further evidence of his eavesdropping.

{¶6} After the incident in the parking lot, the trustees met with Ms. Pintagro about her concerns. She told them that she did not want to work when Mr. Gersper would be at the office, and they said they would talk to Mr. Gale about Mr. Gersper's schedule. Ms. Pintagro completed the workweek and hoped that the trustees would have a solution in place by the beginning of the next week.

{¶7} One of the trustees spoke to Mr. Gale, but Mr. Gale was not receptive to changing Mr. Gersper's schedule because he wanted Mr. Gersper to be available whenever he needed him. Accordingly, when Ms. Pintagro came into work the following Monday, she learned that Mr. Gersper would still be in that day. Rather than work at the same time as Mr. Gersper, Ms. Pintagro told the trustees that she was going to use her vacation time until they figured

something out. The trustees met a few days later and determined that it was impossible to keep Ms. Pintagro's schedule separate from Mr. Gersper's. According to the trustees, Township meetings are held on Mondays. On those days, Mr. Gale needed Mr. Gersper to be in the office to get things ready for the meeting and they needed Ms. Pintagro to be in the office to get things ready for them. They, therefore, determined that Ms. Pintagro's only options were to resign or be terminated.

{¶8} The trustees had their lawyer, Jeffrey Snell, deliver the news to Ms. Pintagro. After learning that she would still be paid for her unused vacation time, Ms. Pintagro chose to resign.

{¶9} Ms. Pintagro sued the Township, the trustees, and Mr. Snell for a hostile work environment, retaliation, wrongful termination, tortious interference with employment relations, age discrimination, violation of the public records act, and civil conspiracy. The trial court granted summary judgment to the Township and the trustees on her hostile work environment claim because it determined that she did not present any evidence that she had been treated differently because of her age or sex; on her retaliation claim because it determined that she had not engaged in a protected activity; on her wrongful termination claim because it determined that the claim was identical to her hostile work environment and retaliation claims; on her tortious interference claim because it determined that such claims do not apply to an employee's supervisor or employer; on her age discrimination claim because the Township had replaced her with someone of similar age; on her violation of public records claim because she had not filed a mandamus action; and on her civil conspiracy claim because it was a derivative claim and her other claims were without merit. It also denied the motion to amend the complaint that Ms. Pintagro had filed in September 2010 because of the timing of the motion and its determination

that the amendment would prejudice the defendants. Ms. Pintagro has appealed, assigning two errors.

## RETALIATION

{¶10} Ms. Pintagro's first assignment of error is that the trial court incorrectly granted summary judgment to the Township and the trustees regarding her claim that the trustees retaliated against her for reporting Mr. Gersper's workplace harassment. She has argued that, even though Mr. Gersper's motivations are unknown, it did not excuse the Township from investigating her complaint instead of terminating her. In reviewing a ruling on a motion for summary judgment, this Court applies the same standard that the trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App. 3d 826, 829 (1990).

{¶11} Under Section 4112.02(I) of the Ohio Revised Code, it is "an unlawful discriminatory practice . . . [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section . . . ." "To establish a case of retaliation, a claimant must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 116 Ohio St. 3d 324, 2007-Ohio-6442, at ¶ 13. "If a complainant establishes a prima facie case, the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at ¶ 14 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "If the employer satisfies this burden, the burden shifts back

to the complainant to demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

{¶12} The trial court denied Ms. Pintagro's retaliation claim because it determined that she had not opposed an unlawful discriminatory practice when she told the trustees about Mr. Gersper's conduct. Specifically, she did not allege that Mr. Gersper had harassed her because of her age or sex. Ms. Pintagro has argued that it is only because the Township failed to investigate her allegations that the reasons for Mr. Gersper's actions remain unknown.

{¶13} It was Ms. Pintagro's burden under Section 4112.02(I) to establish that she engaged in a protected activity, that is, to demonstrate that she "opposed an[ ] unlawful discriminatory practice" such as harassment because of her "race, color, religion, sex, military status, national origin, disability, age, or ancestry[.]" R.C. 4112.01(A)(8) (defining unlawful discriminatory practice to include any act prohibited under Section 4112.02); 4112.02(A), (I); *Greer-Burger v. Temesi*, 116 Ohio St. 3d 324, 2007-Ohio-6442, at ¶13. In its motion for summary judgment, the Township noted that Ms. Pintagro did not assert in her affidavit or at her deposition that Mr. Gersper's allegedly harassing conduct was sexist or ageist in nature or that it was directed at her because of her age, sex, or some other protected status. Ms. Pintagro also has not presented any authority for her argument that a court should infer discriminatory intent when an employer fails to investigate a claim of workplace harassment. She also has not persuaded this Court to adopt her argument in the first instance. Even assuming that Mr. Gersper's actions constituted harassment, it is as likely that his conduct was motivated by a personality conflict or other non-discriminatory reasons as it is that it was motivated by prejudice. *See Sutton v. Tomco*

*Machining Inc.*, 129 Ohio St. 3d 153, 2011-Ohio-2723, ¶ 10 ("[N]o presumption of retaliation arises from the fact that an employee is discharged soon after [a workplace] injury.").

**{¶14}** Ms. Pintagro has also argued that a report of workplace harassment should be recognized as a legally protected activity no matter what the reason for the harassment. Her argument is not supported by Section 4112.02(I) of the Ohio Revised Code, which only protects an employee from retaliation for "oppos[ing] [an] unlawful discriminatory practice."

**{¶15}** The Ohio Supreme Court has recognized exceptions to the employment at-will doctrine only if an employer's conduct has violated "[c]lear public policy." *Collins v. Rizkana*, 73 Ohio St. 3d 65, 69 (1995) (quoting *Painter v. Graley*, 70 Ohio St. 3d 377, paragraph three of the syllabus (1994)). According to the Supreme Court, whether conduct is prohibited by public policy must be discerned from "the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Id.* (quoting *Painter*, 70 Ohio St. 377, at paragraph three of the syllabus); *see Painter*, 70 Ohio St. 3d at 384 ("[A]n exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute.").

**{¶16}** Ms. Pintagro has not directed this court to any constitutional, statutory, administrative, or common law authority that suggests that an employer may not terminate an employee for complaining about her fellow employees when her complaints do not arise from discriminatory conduct by the other employees or from the fact that the other employees have violated a state or federal law. R.C. 4112.02(I); 4113.52(B). We, therefore, decline to expand the public policy codified by the General Assembly in Chapter 4112 of the Ohio Revised Code, which would, in effect, create new public policy. *See Dohme v. Eurand Am. Inc.*, 130 Ohio St. 3d 168, 2011-Ohio-4609, ¶ 24-25 (concluding that employee's general reference to workplace

safety was insufficient to establish that his discharge was in contravention of a clear public policy); *Painter v. Graley*, 70 Ohio St. 3d 377, 385 (1994) (concluding that there was not clear public policy in support of allowing public employees to become candidates for public office); *Gianinni-Baur v. Schwab Retirement Plan Servs.*, 9th Dist. No. 25172, 2010-Ohio-6453, at ¶ 28 (concluding that there was no state-level prohibition of discrimination on the basis of sexual orientation).

{¶17} There is no evidence that Ms. Pintagro engaged in a protected activity. Accordingly, the trial court correctly concluded that the Township and the trustees were entitled to summary judgment on her retaliation claim. Ms. Pintagro's first assignment of error is overruled.

MOTION TO AMEND COMPLAINT

{¶18} Ms. Pintagro's second assignment of error is that the trial court exercised improper discretion when it denied her motion to amend her complaint to add a claim that the trustees violated Ohio's Open Meeting Law. According to her, the trustees maneuvered to wrongfully terminate her and hid their unlawful conduct in deliberately misleading meeting minutes. She has argued that she could not have known that the minutes were misleading until she took the depositions of the trustees in June 2010.

{¶19} In December 2008, Ms. Pintagro obtained the minutes of the trustees' June 2008 meetings. The minutes of each of the meetings were recorded on the same page. According to those minutes, the trustees held a special meeting on June 17, 2008. At the meeting, they adjourned to an executive session to consider the issues that Ms. Pintagro had raised. At some point, Ms. Snell moved to "recess the executive session until a later date" and moved to reconvene the meeting on June 23. When the trustees reconvened, Ms. Snell immediately moved

to adjourn to an executive session. She later moved to recess the meeting because no decisions had been made and moved to reconvene on June 30. At the June 30 meeting, Ms. Snell again moved to adjourn to an executive session. The trustees eventually decided at that meeting to permit Mr. Snell "to discuss and notify an employee regarding employment concerns."

{¶20} The minutes appear to indicate that it was at the June 23 meeting that Ms. Snell moved to reconvene on June 30. According to Ms. Pintagro, Ms. Snell's deposition testimony, however, suggests that the trustees did not schedule the June 30 meeting on June 23. She has argued that Ms. Snell's testimony indicates that the June 30 meeting actually did not get scheduled until June 29, which, she contends, was a violation of the state's Open Meetings law. *See* R.C. 121.22(F).

{¶21} Ms. Pintagro filed her complaint in July 2009. The trial court scheduled trial for October 26, 2010, and set July 16, 2010, as the deadline for completion of discovery. Ms. Pintagro took Ms. Snell's deposition on June 16, 2010. She did not move to amend her complaint, however, until September 28, 2010, which was more than a month after the defendants had moved for summary judgment and less than a month before the date set for trial. The defendants opposed the motion, arguing that "they would be prejudiced by delaying this matter . . . , particularly when [Ms. Pintagro] was in possession of the meeting minutes since December 2008 . . . . Further, addition of the claim would delay trial and entitle the parties to another round of dispositive motions as the proposed claim is likely outside of the statute of limitations." The trial court denied Ms. Pintagro's motion to amend because it found that the defendants "would be prejudiced by further delay and th[e] amendment of pleadings at this late stage would be improper."

**{¶22}** "Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." *Peterson v. Teodosio*, 34 Ohio St. 2d 161, 175 (1973). On the other hand, "motions to amend pleadings . . . should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Turner v. Cent. Local School Dist.*, 85 Ohio St. 3d 95, 99 (1999). This Court has recognized that "an attempt to amend a complaint following the filing of a motion for summary judgment raises the spectre of prejudice." *Cunningham v. Cunningham*, 9th Dist. No. 01CA007938, 2002-Ohio-2647, at ¶ 16 (quoting *Johnson v. Norman Malone & Assoc. Inc.*, 9th Dist. No. 14142, 1989 WL 154763 at *5 (Dec. 20, 1989)). It has also cautioned that a plaintiff should not be allowed to sit by and then "bolster up their pleadings in answer to a motion for summary judgment." *Id.* (quoting *Johnson*, 1989 WL 154763 at *5).

**{¶23}** Ms. Pintagro moved to amend her complaint fourteen months after she filed her action, three months after she learned about the potential claim, two months after discovery closed, six weeks after the defendants moved for summary judgment, and only four weeks before trial. While Ms. Snell's testimony was ambiguous regarding when the trustees scheduled the June 30 meeting, she did not definitely state that they set the meeting on June 29, meaning that the parties would have needed to conduct additional discovery to determine when the meeting was scheduled. It would also have required the court to allow the parties to file a new round of dispositive motions and delayed the trial date, which had been set a year in advance. We, therefore, conclude that the trial court exercised proper discretion when it denied Ms. Pintagro's motion to amend. Ms. Pintagro's second assignment of error is overruled.

CONCLUSION

**{¶24}** Because Ms. Pintagro did not present any evidence that she opposed an unlawful discriminatory practice, the trial court correctly granted summary judgment to the Township and trustees on her retaliation claim. The trial court exercised proper discretion when it refused to let her amend her complaint to add a claim under Section 121.22(F) of the Ohio Revised Code. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

CANNON, J.
TRAPP, J.
CONCUR.

(Cannon, J. and Trapp, J., of the Eleventh District Court of Appeals, sitting by assignment pursuant to §6(C), Article IV, Constitution.)

APPEARANCES:

ROBERT D. KEHOE and JOSEPH J. JERSE, Attorneys at Law, for Appellant.

JONATHAN W. PHILIPP, Attorney at Law, for Appellant.

AMY S. THOMAS, JOHN T. MCLANDRICH, TODD M. RASKIN and FRANK H. SCIALDONE, Attorneys at Law, for Appellee.